# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

Eddie LaReece Pittman
**Pro Se, Plaintiff**

Vs.  Case Number 5:23-CV-00256-FL
(Jury Trial Demanded)

Wake Technical Community College,
Jason Whitehead,
Andrew Lloyd,
Chris Walker,
Zaid Khalil and father
**Defendants**

## COMPLAINT

Pro Se Plaintiff, Eddie LaReece Pittman, through his own Pro Se ambition complains of Wake Technical Community College et al. As follows:

### INTRODUCTION

1. This is a Civil rights complaint for violation of protections secured by 42 U.S. Code &1981 of the Civil Rights Act of 1866 and Title VI of the Civil Rights Act of 1964. Action is also for violation of guaranteed protection from the Equal Protection Clause of the 14th Amendment. The Pro Se Plaintiff wishes to demonstrate that Department Official Jason Whitehead discriminated against Plaintiff in certain ways while not doing anything about certain students and class incidents involving the Plaintiff being bullied (students bullying the Plaintiff).

2. From January 2019 till ~May 15, 2019 the Pro Se Plaintiff was employed as a Chemistry Adjunct Instructor at Wake Technical Community College and assigned specifically to the RTP branch/campus in Morrisville, NC.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction over Plaintiff's federal claims is conferred by 28 U.S.C. § 1331. The Plaintiff not only alleges Deliberate Intentional Discrimination but also affirms that he has private right of action and individual relief through the institution which is state and federal funded.
4. Moreso, the Honorable Court has venue over this action since the acts described occurred within the Court's geographical range.

1

## PARTIES

5. Pro Se Plaintiff, Eddie LaReece Pittman, resides at 315 West Elliot Road Suite 107 #297 Tempe, AZ 85284
6. Defendant Wake Technical Community College is the employer whose corporate locality is at 9101 Fayetteville Road Raleigh, NC 27603. Defendant Jason Whitehead's official locality is 9101 Fayetteville Road Raleigh, NC 27603 as well. Defendant Andrew Lloyd...................................(Publication or after filing ask Court for time to find whereabouts to get them served or ask Court to compel Defendant WTCC to release last address for on file)
Defendant Chris Walker........................................(Publication or after filing ask Court for time to find whereabouts to get them served or ask Court to compel Defendant WTCC to release last address for on file)
Defendant Zaid Khalil and father.......................(Publication or after filing ask Court for time to find whereabouts to get them served or ask Court to compel Defendant WTCC to release last address for on file)

## ALLEGATION OF FACT

1) Was hired in December 18 and was informed I'd be teaching at new RTP campus
2) Dr. Balachander did a sit in evaluation on me in early February 19 which she informed me about ahead of time
2a) at this point, I was already being told I'd be the main RTP instructor for Gen Chem and various emails support that(Dr. B basically said that after I made inquiries)
3) Mr. Whitehead did one shortly thereafter and he did not make it aware to me ahead of time; his feedback was more critical than Dr. Balachander.
4) During 1 few weeks of class, students, Chris Walker, Long Duong, Avery Padula, Simone Walker, Zaid Khali, etc. imposed questions relative to doing something to make them more receptive of the course material so they could get higher marks. There is nothing wrong with that in general but the Plaintiff being just an Adjunct while working another job in a different state was not in position to come up with creative strategies that would help them better appreciate the course material. Even further, Permanent Instructors with a set salary are the ones in better position than the typical Adjunct who is basically not making enough money to just completely devote all of one's time towards the course's designated instructor strategy. With that said all that is legally required of an Adjunct especially teaching one or two courses or labs is to give clear lecture presentations usually via using a permanent instructor's Power Point Presentation. Adjuncts are also responsible for grading all student work that must be evaluated then inputting within system and give corresponding feedback regarding. Adjunct must also be in position to quickly respond to students' emails and other internet requests/questions. Adjunct may also be responsible for making sure Labs are properly set up. Upon doing that, there was absolutely no time for the Plaintiff to do any more. This is all the Plaintiff was required to do by law.
5) Chris Walker asked the Plaintiff to change the due date for lab reports so he could have more time to prepare it. Thye Plaintiff had them turn in lab reports during following class period after lab was done(If lab done Tuesday then reports due Thursday before class). The Plaintiff found that to be most suitable for his intent in staying on top of his requirement to grade and promptly return, more so, it was beneficial to have students do their respective lab reports while the actual lab experience was still fresh. There is a more likelihood to gain something meaningful out of the lab experience when one is required to apply interpretation of that experience in a relatively short

2

period of time. Unfortunately, most students did not agree simple because they really had no desire to gain the most out of the lab experiences. Lab experiments are designed to have students experience learning or re-enforcing concepts introduced during lectures. Now, with that in mind, it is generally acceptable that the instructor hold students accountable when blatant disregard for lab activities is demonstrated. The instructor has that right otherwise what is the point in having labs if one allows students to just treat the labs as if they were nothing.

6) During 1st few weeks in one of the initial labs, the Plaintiff was demonstrating to them how to do a certain critical procedure and it was imperative that they came in close to see it done otherwise they would not know. The situation could not be adequately witnessed by the human eye at a long distance. Everyone really needed to be up on the situation in order to witness it. The Plaintiff asked them to do it in order to get the most out of the activity but most choose not to. Thus, the Plaintiff had the right to hold them accountable for not putting themselves in position to see the activity. Most of them stayed put in their seats. Lab Technician, Tymann Patrick was present and saw the lack of interest from them especially the table where Chris Walker and co. sat. Mr. Walker is an older student, white male in his 40s with eyeglasses and a small beard with gray hairs. Thus, he was the senior at the table. Tymann Patrick noticed that as well.

7) As hinted before, part of the grading for lab typically involves participation, lab technique and overall attitude and adjustment towards the specific lab experiment. Without doing that at all, it gives students the right not to take lab seriously. Thus, the Plaintiff took it upon himself to penalize within that category for the lack of involvement with the demonstration. The Plaintiff in turn sent a class email to all regarding the matter and acknowledges that the email sent to them may have been a little too critical. Dr. Balachander and Mr. Whitehead saw the email then advised the Plaintiff to not penalize them for the misunderstanding. Now, at this point that, this incident along with various students boldly expressing their intent on using the course as a "stepping stone" greatly aggravated the Plaintiff and that set tone for that harsh email. "The lack of respect for the course." Supervisors turn around to tell the Plaintiff to not do it especially with Whitehead advocating stuff like "keeping the tone and atmosphere on a subtle level." The Plaintiff agrees to certain extent; hostile work environments are not productive but he did not see the big picture and basically prioritorized "formalities" over "substance."

8) After that incident, Defendant Chris Walker was even more agitated and the Plaintiff recognized he was basically looking for some concrete ammunition to use against the Plaintiff. On 4 different occasions while the Plaintiff was talking specifically to an individual student after class, etc. Mr, Walker would stay over just so he could observe the dialogue while not having any reason to address anything to the Plaintiff, himself.

9) Late February/early March, Mr. Walker sends the Plaintiff an email basically telling the Plaintiff to either change the way he was doing things so he could get his "A" in the class or else. The Plaintiff apologized to him for his feeling that way and basically said "can we put this negativity to the side and focus on getting something out of the course. Soon thereafter, he withdrew from the course. The Plaintiff related the issue to Dr. Carter and Mr. Whitehead. Whitehead asked the Plaintiff to forward him all relevant correspondences.

10) By the middle of Spring semester, Avery Padula, Zaid Khalil, Long Duong, etc. were overly still pushing "I need an A...." They were doing it in a manner to demand the Plaintiff to do something to ensure they get an "A" rather than respectfully ask to be in position to get the most out of the Course and Lab or for some other resources they could use to help them get better grades. They basically had no respect for the course; it's all about the grade and the Adjunct Instructor Eddie Pittman was responsible for them not getting the grade they wanted.

11) Avery Padula specifically put the Plaintiff on the sport several times during class/lab about "having a study session." It was her and the rest of the classes responsibility to come to terms if

3

they wanted to get together at a certain time which would be compatible with the Plaintiff's availability which the Plaintiff had already made known. The instructor cannot just dictate to the class "OK, we should have a study session on Tuesday after Lab from 4 till ~7PM....." Again, it was on them to come to terms of a time to meet compatible with a time made known that Plaintiff could be free to meet then address to the Plaintiff."

12) More so, the Plaintiff got impression from Mr. Whitehead that students were complaining about the Plaintiff grading too harsh for lab reports but, he was covering it up and trying not to say the students were complaining.

13) One incident involved Mr. Whitehead asking the Plaintiff to post on blackboard his being available for a "help session" at a certain time so the Plaintiff did so and asked the students "keep the sessions constructive and not go in saying "Dr. Pittman said this, Dr. Pittman said that...instead This is what I recently perceived etc...Don't turn sessions into a Dr. pittman versus Mr. Whitehead scenario." Mr. Whitehead did not appreciate that. Now it's kind of contradictory in that he comes cross as focusing on formalities in order to keep the environment constructive but could not see the Plaintiff's effort there as being based on that same principle. The Plaintiff's intent was to convey "We don't need a my word versus his word show." stay away from that and be objective without pointing fingers and focus on getting something out of the material." There is absolutely nothing wrong with that and again the Plaintiff was within his rights as an instructor to advocate it. Whitehead imposed on that right.

14) Towards the end of semester, the Plaintiff got various emails from most about various things; a student named Zaid wanted the Plaintiff to curb the grade and give a take home final.

15) Also towards the end, on 3 or 4 different occasions, Avery Padula would ask the Plaintiff to work a problem during class, then Andrew Lloyd who would tell her how to do it while the Plaintiff was spending 5 to 10 minutes on the board doing the problem for her then turn around after doing it and see no acknowlegement, etc. from her. The point is this, students are more than welcome to help one another but its kind of rude to ask the instructor to do something for you then your friend turns to you and does it for you while the instrucutor is wasting valuable class time. The Plaintiff sees her and him as negligent in that regard. Another incident relating to both, Ms. Padula addressed something to the Plaintiff and Ithe Plaintiff wanted clarity then Mr. Lloyd says "she made it perfectly clear..." That was very inappropriate in that she was not clear enough for the Plaintiff. The Plaintiff would never do that as a student even if the Plaintiff is seeing something the instructor does not see, if anything, provide input to what she was saying in one's own words and all can see. but to say "She made it perfectly clear" is undermining. A stupid question is one not asked and it does not matter where it comes from. Defendant Andrew Lloyd violated the Plaintiff's academic rights as an instructor via basically interfering with the instructor trying to do his job. It was destructive and contributed towards division between the Instructor and rest of class. Ms. Padula was partly wrong as well because she fell right for his deliberate interruption. Thereafter, the Plaintiff asked both of them to separate themselves right at end of semester. There was a third incident as well in the lab where Avery asked for the Instructor's assistance with doing something then Mr Lloyd comes over and makes a suggestion right in front of the Plaintiff. Even if his way was better, it is professional to contribute in a constructive respectable manner. It is very ignorant to do things in a way to undermine and create distrust and division. Mr. Lloyd was smart but cross the line in several ways with this sort of stuff. Mr. Lloyd hurt his credibility as a student with that class because it all about the grade; it is even more so about every contributing with what they can do (even the instructor) and relating in a constructive manner. His acts were worse than the Plaintiff aggressively coming down on the students for not respecting that lab activity. That was the Plaintiff's right but Mr. Lloyd had not right interfering with the Instructor doing his job. He imposed of the Plaintiff's

4

academic rights as an Instructor. The Instructor had just as musch right to ask her to repeat the question as anyone would ask to repeat any concept or question.

15a) All throughout the semester, Avery Padula and her friend Madelyn Miradorl were nearly always typing and doing something with their laptops while in class(what they were doing obviously was not related to this course the Plaintiff was overseeing). The Plaintiff noticed it from day one but did not make issue about it till the end after Mr. Padula kept complaining about not enough details being written on the board. The Plaintiff constructively informed her that purpose in coming to lecture is to get insight and take notes while getting through the course. Everything said during a lecture is not going to be written on the board. You can't let todays technology supersede traditional requirements in regard to

16) After final exams were done, the Plaintiff gave the students a couple days to get with him regarding any issues before officially submitting their grades simply to ensure he was making no mistakes and all was good. Zaid Khalil came in and ask the Plaintiff if his dad could sit in on the talk about his final grade. The Plaintiff allowed it and thought nothing of any potential "Ferpa" violations. The online training with all the scenarios and examples had no example with a student coming in with a parent to discuss grades. It mainly involved examples of anyone other than the student inquiring about the student's grades. Zaid obviously informally approved of his father to be there while the grades were discussed. More so Zaid is 17 years old and still in high school but allowed to take the Chemistry course thus there was no "FERPA" violation. Mr. Whitehead made issue about that after the Plaintiff informed him while turning in grades. Wake Tech may still require some formality to follow even in that regard but Federal Law in relation to FERPA was not violated. Now, the talk with Zaid and his father was productive in that he was using the wrong formula in manually determining the final grades, it did not make any difference with Zaid getting a "B" in the course but some people were borderline and it made difference with them, So the Plaintiff ultimately resorted back to original system before submission of grade. Now, Zaid's father tried to coerce the Plaintiff to give Zaid an "A." He crossed the line with that effort. The father basically advocated that since they caught the mistake then the Plaintiff should give Zaid an "A" in the class. Zaid and his father are guilty of trying to blackmail the Plaintiff while violating his rights to issue the grades based on what was legitimately earned. Even if one made a mistake while doing so, one should make sure one is doing the right thing. Zaid and his father violated Federal Law by trying to force Plaintiff to give Zaid an "A" after an honest mistake was brought to Plaintiff's attention in effort to see if an "A" was actually earned when it was not.

Now, on that same day the Plaintiff saw Mr. Whitehead and after talking the Plaintiff concluded he was not going to asked to come back and teach. b

The last incident of direct discrimination happened on ~ 08-15-2019 when the Plaintiff was not slated to return teaching for Fall 2019 semester as promised. More so, an implied continued act of discrimination happened ~ October/November 2019 with the internal system at Wake Tech ignoring the internal complaints and not providing any feedback as promised.

## INJURIES SUFFERED
A) Plaintiff suffered Damaged reputation

5

B) Plaintiff loss of income could have earned had he not been discriminated against
C) Professional humiliation
D) Emotional and Mental Distress

## PRAYER FOR RELIEF

A. Compensatory damages: $100,000
B. Punitive Damages: $200,000

## JURY DEMAND

Pro Se Plaintiff Pittman hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38 (b) on all issues so triable.

Respectfully Submitted

*[signature]* Eddie Rueca Pitt Pro Se

Dated 05-07-2023

315 West Elliot Road Ste 107 #297
Tempe, AZ 85284
Pittmaneddie@aol.com
202-549-0094 (cell)

6